# United States District Court
## Western District of Virginia
### Harrisonburg Division

|  |  |  |
|---|---|---|
| **DONNA DALLAS,** | ) ) ) | Civil No.: 5:10cv00120 |
| *Plaintiff*, | ) ) |  |
| v. | ) ) | REPORT AND RECOMENDATION |
| **MICHAEL J. ASTRUE**, Commissioner of Social Security, | ) ) ) |  |
|  | ) | By: Hon. James G. Welsh |
| *Defendant,* | ) ) | U. S. Magistrate Judge |

Donna Dallas brings this action challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her application for a period of disability and disability insurance benefits ("DIB") [1] under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

The record shows that the plaintiff protectively filed her application on September 27, 2004, alleging that she became disabled as of January 1, 1998 due to fibromyalgia, back pain, and leg pain. (R.14,19,52,80-84,90). Following an administrative hearing (R.313-336), on October 18, 2005 the presiding administrative law judge ("ALJ") issued an unfavorable decision. (R.34-42). Under the agency's "substantial evidence provision" (20 C.F.R. § 404.970(a)(3)), the plaintiff's timely request for Appeals Council review was granted; the hearing decision was

---

[1] The plaintiff's insured status for DIB expired September 30, 1998. (R.16,90).

vacated, and her claim remanded for a new hearing. (R.14,43-47). In accordance with the remand order a second hearing was thereafter held on November 17, 2009. The plaintiff was present; she testified, and vocational testimony was given by Robert Lester. (R. 337-369). A second unfavorable decision was issued on December 2, 2009 (R.14-22), and the plaintiff again sought Appeals Council review (R.9-10). This request was denied (R.6-8), and the unfavorable second ALJ decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Along with his Answer to the plaintiff's Complaint, the Commissioner filed a certified copy of the Administrative Record ("R."), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By an order of referral entered on March 22, 2011 this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have since moved for summary judgment, and each has filed a supporting memorandum of points and authorities. No request was made for argument.

## I.     Summary and Recommendation

Using the agency's five-step evaluation process, the ALJ made the following pertinent determinations: (1) the plaintiff had not engaged in substantial gainful work activity during the decisionally relevant period from her alleged onset date of January 1, 1998 through her last insured date of September 30, 1998; (2) during this period degenerative disc disease of the

2

lumbar spine and low back pain were her only *severe* [2] impairments; (3) through her last insured date these impairments, neither individually nor in combination, were not of sufficient severity to meet or medically equal an impairment listed in 20 U.S.C. pt. 404, subpt. P, appx. 1; (4) through her last insured date the plaintiff lacked the residual functional ability to perform any of past relevant work; and (5) based on a consideration of the entire record, including the vocational testimony, through her last insured date, the plaintiff retained the functional ability to perform a range of sedentary work. [3] (R.16-21).

On appeal the plaintiff assigns error to the ALJ's finding that she retained the functional ability to perform a range of sedentary work. Based on a treating physician's functional assessment dated February 14, 2005, more than seven years after expiration of her insured status, she argues that from the medical record it is "possible to reasonably infer that she was disabled in 1998 as she alleges. Secondarily, she argues that the ALJ erroneously failed to take her obesity into account in making his assessment of her residual functional capacity. After a careful review of the full record, the undersigned concludes there is substantial evidence in the record to support each of the contested findings, as well as the ALJ's non-disability determination.

---

[2] Quoting *Brady v. Heckler*, 724 F.2$^d$914, 920 (11$^{th}$Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4$^{th}$Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. §§ 404.1520(c).

[3] "**Sedentary work**" is defined as the capacity to lift or carry 10 pounds occasionally and less than 10 pounds frequently, stand or walk about 2 hours in an 8-hour workday, and sit about 6 hour in an 8-hour workday that involves no climbing ladders, ropes or scaffolds and only occasionally involved other postural activities such as climbing stairs or ramps, balancing, stooping, kneeling, crouching, and crawling. 20 C.F.R. § 404.1567(a).

## II. Standard of Review

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2$^d$ 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2$^d$ at 642). The court is "not at liberty to re-weigh the evidence . . . or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3$^d$ 650, 653 (4th Cir. 2005) (internal quotation marks omitted).

## III. Evidence Summary

At the time of the plaintiff's alleges disability onset, she was forty-seven years of age. (R.90.341). She had attended school through the sixth grade and subsequently obtained a general education diploma. (R.319,342). Her relevant work experience was a job as a greeting card merchandiser. (R.21,342,362). As regularly performed this job is considered exertionally heavy and semi-skilled. (R.362).

4

During the decisionally relevant period, the plaintiff's medical records show that her routine medical care was provided by George Weidig, M.D. (R.128-137,186-197). Covering the period between May 12, 1997 and February 17, 1999, Dr. Weidig treated her for sinus and ear infections, palpitations, hyperthyroidism, hair loss, low back pain, weight reduction, TMJ pain, and gastrointestinal upset. (*Id*.)

His office records show that the plaintiff first presented with a complaint of low back pain in May 1997. (R.186). At that time, her weight as 198 lbs. (R.136,189). Eighteen months later, shortly after her insured status expired, she similarly complained of low back pain. (R.128). Her weight at that time was only 169 lbs. (*Id*.).

Complaining of a worsening aching and throbbing low back pain radiating into her left lower extremity "of twelve month[s] duration" she was seen on Dr. Weidig's referral at Blue Ridge Pain Treatment Center (J, Sherry, M.D.), on July 31, 2000. (R.160-163). Neurological and chest examinations at that time demonstrated no abnormality. (R.162). Her musculoskeletal examination demonstrated no loss of sensation or loss of lower extremity strength; her gait and station were normal, and she demonstrated proper spinal stability and alignment; however, she was found to have paravertebral tenderness and decreased range of motion due to pain. (*Id*.). Dr. Sherry described her condition as "a low back syndrome;" he administered a paravertebral block and prescribed a pharmacologic pain management regime. (R.161,163).

Without any significant change, the plaintiff's more recent medical records, including various clinical and diagnostic findings by multiple health care providers, further document the

5

plaintiff's ongoing complaints of low back and neck pain secondary to mild degenerative lumbar disc disease. (R.118-123,153-165,166-172,173-179,197-231,292-301-311). For example, a physical examination by William Cale, M.D., in October 2005 disclosed no neurological deficits, no chest or cardiovascular problems, no limitation of neck motion, no restriction or asymmetry movement in any extremity, and no spinal or costovertebral angle tenderness. (R.292-293). Dr. Cale diagnosed the plaintiff's pain-related condition as a "fibromyalgia syndrome." (*Id*.). Similarly, a lumbar spine MRI in April 2008 demonstrated no disabling back condition and only "suggest[ed] mild degenerative disc disease and facet degenerative change within the lower lumbar spine." (R.306).

Nevertheless, in February 2005, more than five years after the plaintiff's last insured date, Dr. Weidig completed a functional assessment form in which he listed a number functional limitations and concluded that as of her last insured date (September 30, 1998) the plaintiff's was not capable of performing work at a sedentary exertional level. (R.180-184).

IV.     Discussion

A.

The principal issue presented by the plaintiff on appeal is whether the ALJ erred by failing to give controlling decisional weight to Dr. Weidig's 2005 assessment of the plaintiff's ability to perform work-related activities on a regular and sustained basis as of September 30, 1998 due to pain-related degenerative disc disease. To be afforded controlling weight, however, a treating physician's assessment and conclusions must be well-supported by objective medical

6

evidence. *Craig v. Chater*, 76 F.3ᵈ 585, 590 (4ᵗʰ Cir. 1996) (quoting 20 C.F.R. § 404.1527(d)(2)). The record in this case simply lacks this essential objective medical evidence.

Dr. Weidig's office records covering a ten-year period from August 1997 through mid-December 2008 show that the plaintiff sought treatment for a number of health-related complaints, including chronic low back, hip and leg pain, weight loss, hair loss, shortness of breath, heart fluttering, sinus problems, sleep problems, ear ache, and gastrointestinal distress. (R.17; *see e.g.*, R.128-131,137, 187-189,198-199,204,21-213,216-217219-221, 227-227). For all of these complaints, Dr. Weidig's treatment was conservative. (*Id.*). And as the ALJ succinctly summarized in the decision, "The evidence is void of any significant functional limitations on the ability to perform work-related activity." (R.17).

In effect, Dr. Weidig's own treatment records compel a rejection of his opinion. Moreover, the overall absence of any supporting physical examination, test results, laboratory finding, or other objective medical evidence also compels a rejection of Dr. Weidig's opinion. (*See* R.17,19). Contrary, therefore, to the plaintiff's argument, the ALJ appropriately explained his decision to give little weight to Dr. Weidig's opinion, and contrary to the plaintiff's argument this finding is supported by substantial evidence.

**B.**

The plaintiff's contention that the ALJ inadequately evaluated her obesity in making his residual functional capacity determination is similarly without merit. This argument ignores the

fact that the plaintiff weighed only 169 lbs. at the time her insured status expired. (R.128). It ignores the ALJ's finding that she "sought appropriate treatment, achieved "good results" with diet and exercise. (R.20). It ignores the ALJ's finding that her obesity "had no significant impact on any other body system." (*Id*.). It ignores the fact that her attorney suggested no such impact in any question posed to the vocational witness. (R.364-365). Likewise, it ignores the absence of anything in the medical record itself that suggests the plaintiff's obesity has either resulted in or exacerbated any significant limitation in her ability to perform work activities of the type identified by the ALJ. Moreover, on appeal she suggests no specific physical impairment that she contends has been exacerbated by her weight, and she ignores the fact that obesity alone does "not correlate with any specific degree of functional loss." *See* SSR 02-1p.

Succinctly put, the medical record and the ALJ's relevant findings in this case more than adequately demonstrate that prior to the expiration of her insured status the plaintiff's obesity, as a condition, did not contribute to her inability to work. *See Rutherford v. Barnhart*, 399 F,3$^d$ 546, 552-553 3rd Cir. 2005).

## C.

In this case it merits mention that both arguments presented by the plaintiff on appeal rely primarily on an implied contention that the ALJ improperly weighed the evidence. The court, however, must uphold the Commissioner's final decision if it is supported by substantial evidence. Although the plaintiff may disagree with the ALJ's determination, the record demonstrates that these determinationswere made after weighing the relevant factors. It is

8

simply not the role of the court to re-weigh the conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3$^d$ at 589.

This recommendation that the Commissioner's final decision be affirmed, however, does not suggest that the plaintiff was totally free of pain and other subjective discomfort or did not have health issues prior to the expiration of her insured status. On review, however, the objective medical record simply fails to demonstrate that her condition during the relevant period was of sufficient severity to result in total disability from all forms of substantial gainful employment. The decision in this case for the court to make is "not whether the [plaintiff] is disabled, but whether the ALJ's non-disability finding is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3$^d$ 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3$^d$ at 589). Likewise, it is for the province of the Commissioner, not the court, to resolve conflicts in the evidence. *Hays v. Sullivan,* 907 F.2$^d$ 1453, 1456 (4th Cir. 1990).

## V.     Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

9

1. The Commissioner's final decision is rational and in all material respects is supported by substantial evidence;

2. The ALJ considered the treating source opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p;

3. Substantial evidence supports the ALJ's rejection of the treating source opinion evidence upon which the plaintiff seeks to rely;

4. The plaintiff's obesity was evaluated by the ALJ in accordance with SSR 02-1p;

5. Substantial evidence supports the ALJ's conclusion that the plaintiff's obesity, as a condition, during the decisionally relevant period did not functionally limit her ability to engage in work activities of the type identified in his decision;

6. The ALJ's decision clearly sets forth the plaintiff's limitations;

7. The limitations included by the ALJ in the hypothetical questions posed to the vocational witness are supported by substantial evidence and consistent with the ALJ's decisional findings;

8. Substantial evidence in the medical record supports that the ALJ's findings more than adequately demonstrates that prior to the expiration of her insured status the plaintiff's obesity as a condition did not contribute to her inability to work;

9. The ALJ properly resolved all decisionally relevant evidentiary conflicts;

10. The Commissioner met his burden of proving that before the expiration of her insured status the plaintiff possessed the residual functional ability to perform work which existed in significant numbers in the national economy;

11. The plaintiff has not met her burden of proving a disabling condition through the date she was last insured; and

12. All facets of the Commissioner's final decision should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: this 2nd day of March 2012.

                                                     s/ *James G. Welsh*
                                                        United States Magistrate Judge